J. W. BARRET'S ADMR. ET AL *v.* J. Y. HILL ET AL.·

**Contracts—Condition Precedent.**

 In a contract for burning 200,000 brick where the evidence shows they were to be used for the erection of a dwelling, the making and burning the exact number is not a condition precedent.

**Same.**

 Where the conditions were that the vendee should perform certain functions, before a strict adherence can be had of the vendor, the vendee should specifically perform

APPEAL FROM GRAYSON CIRCUIT COURT.

November 22, 1869.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Appellants and appellee Hill entered into an agreement August 18, 1849, by which Hill undertook to make, burn and lay 200,000 brick at the Grayson Springs for Barret & Co., at $7.50 per 1,000, *openings* not to be estimated, by June 1, 1850. Barret & Co. to lay the foundation of rock the following spring in time for Hill to complete the work by the designated time. Barret & Co., however, reserved the right not to have the bricks laid the following spring, and in such case to pay Hill $4.50 per 1,000 for the bricks, kiln count, and to notify Hill sufficiently early in the spring for him to have reasonable time to complete the job should they desire the job finished by the stipulated time.

Hill made and burnt a kiln the same fall of the contract, which he insists contained 170,000 merchantable bricks, and Barret & Co. having failed to lay the foundation or notify him the following spring to complete the job, he insists they should pay him for the bricks so burnt, but which they resisted because, as they allege, said brick were not merchantable nor the number contracted for, and by this suit to recover therefor he obtained a judgment against Barret & Co. for $1,303, which appellants seek to reverse.

Hill was to furnish all the material for making and laying the brick, but Barret & Co., exercised some acts of ownership over the kiln after it was burnt, such as covering, etc., and by the agreement the kiln was to be placed where designated by Barret & Co.

In 1852, when the parties were negotiating as to the matter, Hill offered to complete the number by making and burning another kiln, which appellants declined.

It is obvious both from the agreement and the extraneous evidence that the bricks of themselves were not of great moment to Barret & Co. disconnected with any idea of building, but it was in anticipation of erecting a house which would take about 200,000 brick that they contracted for the making the fall previous, and this is especially evidenced in the guarded manner of the stipulation on their part to take all the brick left over after completing the house, provided that these did not amount to more than 15,000.

It is manifest that their object was not to purchase and deal in brick as an article of merchandise.

And it is quite as apparent that Hill would not have made the bricks at that place but for this especial contract, and that neither party anticipated that exactly 200,000 should be made, but as it would take about that number for the anticipated house, a sufficiency at least for its completion was provided for should Barret & Co. determine to have it built the following spring. There can be no doubt but that both parties regarded the brick as the property of Barret & Co. when made, though there was not the 200,000, for they were to be paid for in three regular installments, the first due in October, 1850, save some two hundred dollars to be paid in board.

Had Barret & Co. laid the foundation, or notified Hill in the spring as to their intention to build, he could in all human probability have made and burnt the remainder of the brick in ample time.

All this manifests that the making and burning the exact number of 200,000 brick, in the absence of building the house, was not deemed by either party a condition precedent, nor did it authorize Hill to regard the kiln as his own, and subject to sale by him, but as both parties at first seemed to understand, from their action, the brick belonged to Barret & Co.

This case was before this court and reported in *16 B. Mon.,* but upon demurrer to the petition which this court deemed defective, and therefore affirmed the judgment sustaining it, but then expressed similar views to some of those herein. This litigation has been protracted for near 18 years, and we cannot doubt but that the jury allowed interest in accordance with a proper instruction that they might or not do so, in their discretion, and as the court properly instructed them, they could only allow for the merchantable brick, and any allowance from 75,000 to 150,000 was authorized by the evidence, which was conflicting, and peculiarly within the province of the jury to weigh and accredit.

We can see no substantial grounds because of excessive damages; nor do we find an error in the instructions of the court or finding of the jury in plaintiffs' behalf, nor was there any error in the rejection of instructions asked by the defendants.

Wherefore, the judgment is *affirmed* without damages, no supersedeas appearing.

*Conklin,* for appellants.

*Wintersmith,* for appellees.